**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| JAMIE CHRISTOPHER GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | `3:13-cv-0020` |
| | ) | |
| v. | ) | **Case No. 3:12-mc-00084** |
| | ) | |
| SHEILA HOWARD, CHARLES N. SIMMONS, | ) | **Judge Sharp** |
| APRIL HALL, and JASON WOODALL, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jamie Green, a state prisoner presently incarcerated at the Whiteville Correctional Facility, managed by CCA, in Whiteville, Tennessee, filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights that occurred when the plaintiff was housed at the Charles Bass Correctional Complex ("CBCX"). The complaint is before the court for initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## I.     Factual Allegations

The plaintiff names as defendants Sheila Howard, Charles Simmons, April Hall and Jason Woodall. He alleges that Charles Simmons is Warden of CBCX and thus "legally responsible for the overall operation of the Title VI grievances and is the Title VI Coordinator" at CBCX. Sgt. Sheila Howard is a Correctional Officer CBCX; April Hall is Grievance Chairperson at CBCX; and Jason Woodall is Assistant Commissioner of Operations, also assigned to CBCX.[1] The defendants are sued in both their individual and official capacity.

The plaintiff claims that he received two disciplinary write-ups on July 3, 2012, one of which, for possession of a cell phone, was dropped. The other, for testing positive on a drug screen, was not dropped. On July 6, 2012, the plaintiff asked for a continuation of the hearing on that charge in order to

---

[1] The Court takes notice that Jason Woodall is actually the Deputy Commissioner of Operations for the Tennessee Department of Correction ("TDOC"), to whom the Wardens for each facility operated by TDOC report directly.

permit him to prepare for it and to call witnesses on his behalf. His request was denied, and the plaintiff was found guilty of the charge by Sergeant Sheila Howard and placed in segregation for 5 days, had visitation suspended for 6 months; was fined $4, placed on telephone restriction for 30 days and "Res Restriction" for 9 months, although this was the plaintiff's first disciplinary infraction since January 19, 2010. The plaintiff appealed, but his appeal was denied. The plaintiff asserts that another inmate was found guilty of drug possession around the same time and, although it was his fourth disciplinary infraction, he received a continuation of his hearing, a suspended sentence, and no segregation. The plaintiff alleges "upon information and belief" that Sgt. Sheila Howard "is taking payouts from inmates who receive a disciplinary. If inmates do not have any money, their rights will be violated. Upon information and belief, Deputy Charles N. Simmons has knowledge about the payouts, drugs and phones at [CBBX]." (ECF No. 8, at 2.)

The plaintiff filed a grievance related to his deprivation of due process but the grievance was denied.

The plaintiff seeks injunctive and other equitable relief, including that the disciplinary charge be set aside, as well as compensatory and punitive damages.

## II.      Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a civil complaint or any portion of a complaint filed *in forma pauperis* that (1) fails to state a claim for which relief can be granted, or (2) is frivolous. Section 1915A(a) similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550

U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

III.    **Law and Analysis**

To state a claim under § 1983, a plaintiff must (1) identify a right secured by federal law or the United States Constitution, and (2) demonstrate a deprivation of that right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Both parts of this test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A.    **The Claims Against Hall and Woodall**

As an initial matter, it is clear that the complaint does not adequately allege facts that would support a cause of action of any nature against defendants Jason Woodall and April Hall in their individual capacity. In fact, the complaint contains no factual allegations at all concerning these two defendants, and does not mention them except in the relief section of the complaint, where the plaintiff demands that these defendants "stop violating inmates' rights," that defendant Hall be required to step down as Grievance Chairperson, and that defendant Jason Woodall be required to "start investigating all appeals." (ECF No. 8, at 3.) It is apparent based on the demands for relief that the claims against Hall and Woodall are based on the denial of the plaintiff's grievances and grievance appeals.

The Sixth Circuit has held that where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension. Because the complaint does not contain any factual allegations suggesting Hall and Woodall were involved in the actions upon which the complaint is based, the claims against them in their individual capacity must be dismissed for failure to state a claim for which relief may

be granted.

**B.      The Equal-Protection Claim Against Howard and Simmons**

*1.      Individual-Capacity Claims*

The plaintiff states that another inmate charged with drug possession in the prison received a much lesser sentence than he, even though it was the plaintiff's first infraction and the other inmate's fourth infraction.  He asserts that the other inmate, David Wallace, received a continuance of his hearing date when he requested one, and was given probation or a suspended sentence and no segregation, while the plaintiff's request for a continuance was denied and he was subjected to a much harsher sentence for a comparable infraction.  The plaintiff implies that the reason he received a harsher sentence than Wallace was because the plaintiff did not have the money to bribe prison officials to impose a lesser sentence.  The plaintiff specifically alleges that defendant Sheila Howard takes bribes from inmates in exchange for the imposition of lesser sentences for disciplinary infractions and that if the inmates do not have money for "payouts," "their rights are violated."  (ECF No. 8, at 2.)

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  When an action does not "interfere with fundamental rights or single out suspect classifications [it] must bear only a rational relationship to a legitimate state interest."  *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002)).

The Sixth Circuit has made it clear that "prisoners are not considered a suspect class for purposes of equal protection litigation."  *Id.* at 619 (citing *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998)).  Further, although the plaintiff makes a passing reference in his complaint to racial discrimination, he does not identify his race or the race of any individual involved in his disciplinary proceedings, or allege facts suggesting his punishment was racially motivated.  He therefore does not adequately allege that that he was a member of a suspect group by virtue of his race.

However, the allegations in the claim suggest that the plaintiff was denied equal treatment in his disciplinary hearing to the treatment received by those inmates who pay bribes.  The Court finds that treating inmates who are subject to disciplinary proceedings differently based on whether they pay bribes is an equal-protection violation.  Further, although it presents a close question, the Court also finds that

the plaintiff has alleged the bribery scheme with sufficient particularity to state a claim. As the Supreme Court has stated:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp.*, *supra*, at 555 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The reviewing court must accept the complaint's factual allegations as true "even if [the allegations are] doubtful in fact." *Twombly*, 550 U.S. at 555. *See also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). A complaint thus "does not need detailed factual allegations." *Id.* Nor must a complaint allege with precision all the elements of a cause of action. *See Swierkiewicz*, 534 U.S. at 514–15 (rejecting the assertion that a Title VII complaint could be dismissed for failure to plead all the elements of a *prima facie* case).

As indicated above, the complaint alleges that defendant Howard accepts payouts from inmates in exchange for favorable treatment at disciplinary hearings. That a defendant took a bribe is a factual allegation that must be accepted as true at this stage in the proceedings. The Court therefore finds that the complaint adequately alleges an equal-protection claim on behalf of the plaintiff against defendant Howard in her individual capacity.

The plaintiff also alleges that defendant Simmons knew about and failed to correct Howard's conduct. Based on this allegation, it may reasonably be inferred that Simmons "knowingly acquiesced" in Howard's conduct, which is sufficient to state a claim against a defendant in a supervisory position. *See Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 80–81 (6th Cir. 1995) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). At this point, the allegations are sufficient to create a question of fact as to whether defendant Simmons had an affirmative responsibility to curb corruption, knew about the alleged

misconduct of his employee, and failed to take necessary action. The individual-capacity claim against Simmons will therefore be permitted to proceed.

### 2.    Official-Capacity Claims

The plaintiff's official-capacity claims for damages against Howard and Simmons, however, must be dismissed. These claims are necessarily construed as claims against the Tennessee Department of Correction, an arm of the State of Tennessee, as these defendants are employed at a prison facility that is owned and operated by TDOC. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (official-capacity claims against state officials are "treated as suits against the State"); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (in an action against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent").

The Eleventh Amendment bars suits against a state, and its agencies or departments, unless the state has waived its immunity or Congress has abrogated it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). The only exceptions to a State's immunity are (1) if the State has consented to suit or (2) if Congress has properly abrogated a State's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the State of Tennessee or its agencies. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer*, 502 U.S. at 25 (reaffirming that Congress did not abrogate states' immunity when it passed § 1983).

Although a state's immunity extends to claims for prospective injunctive relief as well as to claims for damages, insofar as the complaint may be construed to seek prospective injunctive relief against the defendants in their official capacity to compel them to comply with federal law, such claims are not barred by the Eleventh Amendment. *See Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993) (noting that an exception set forth in *Ex parte Young* allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief"); *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (holding that, if a plaintiff's complaint against state officials is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not

come under the doctrine of *Ex parte Young*").  To state an official-capacity claim under § 1983 of the type that might entitle him to injunctive relief, the plaintiff needs to show that his claim is not based entirely on past acts, and that there is a direct causal link between the alleged constitutional violation and an official policy or custom adopted by the official makers of the policy with "deliberate indifference" toward the constitutional rights of persons affected by the policy or custom.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

In this case, the plaintiff was transferred to a different facility after the events that gave rise to this complaint.  A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.  *Parks v. Reans*, No. 12-5671, slip op. at 3 (6th Cir. Jan. 7, 2013) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). Even if that were not the case, the Sixth Circuit has held that to establish the requisite causal link between constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).  The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights.  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  Here, the plaintiff has not identified any policy or custom on the part of the State, TDOC, or CBCX itself that resulted in a deprivation of the plaintiff's constitutional rights.  The plaintiff therefore is not entitled to injunctive relief against any state employees based on their implementation or execution of such policies or customs.

In sum, the plaintiff's official-capacity claims against Simmons and Howard are subject to dismissal for failure to state a claim upon which relief may be granted.

C.     The Due-Process Claim

The plaintiff alleges generally that he was deprived of the right to due process during the course of the prison disciplinary proceedings against him insofar as defendant Sheila Howard failed to follow TDOC policy regarding the denial of his request for a continuance and request to call witnesses.  Insofar as the plaintiff seeks to state a due process claim related to the deprivation of procedure prescribed by

prison policy, the allegations in the complaint are insufficient to support such a claim.[2]

To prevail on a procedural due process claim, a plaintiff must show that he had "a definite liberty or property interest and that such interest was abridged without appropriate process." *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)). A liberty interest arises either from the Due Process Clause in the Fifth or Fourteenth Amendments of the Constitution or from the rights conferred by a state. Thus, regardless of whether the plaintiff was denied some process he believes he was owed, to state a colorable claim for deprivation of his constitutional right, he must first establish the existence of a protected liberty interest that was infringed by the deprivation of process.

In other words, "[t]he Due Process Clause does not protect every administrative slight that occurs behind prison walls. It requires process only when a 'life, liberty, or property' interest is at stake." *Harden-Bey v. Rutter*, 524 F.3d 789, 791 (6th Cir. 2008) (quoting U.S. Const. Amend. XIV, § 1). With respect to the plaintiff's confinement in a prison cell and attendant deprivation of liberty, the State of Tennessee has already provided the plaintiff with all "the procedural protections to which he is entitled: a trial in compliance with the due process and other constitutional guarantees applicable to crime and punishment." *Id.* at 792.

Notwithstanding, even after conviction and sentencing, "an inmate still retains a 'liberty' interest, guarded by due process, with respect to state-imposed prison discipline that rises to the level of an 'atypical and significant hardship on the inmate.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In the context of the prison setting, such an "atypical and significant hardship" means that the discipline imposed by a prison "must be unusual and substantial 'in relation to the ordinary incidents of

---

[2] In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that before a prison may forfeit a prisoner's good time credits for violation of prison rules, procedural due process requires that the prisoner receive advance written notice of the claimed violation, that he be allowed to call witnesses and present evidence in his defense, and that he be given a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 561. The due-process rights described in *Wolff*, however, are required only where the prisoner is being deprived of a thing in which he holds a legally protected property or liberty interest, such as an interest in good-time credits. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). The plaintiff here details with some specificity the sanctions he did receive, and he does not allege that he was deprived good-time credits. He does suggest that the disciplinary infraction interfered with his coming up for parole, but the relationship between receiving a disciplinary infraction and coming up for parole is too attenuated in this instance to provide the necessary liberty interest that would support a due process claim. Moreover, it is clear that the plaintiff does not have a protected liberty interest in being granted parole. *Greenholts v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484). In *Harden-Bey*, the Sixth Circuit found that an inmate's allegedly indefinite confinement to administrative segregation constituted a significant and atypical deprivation of liberty that implicated the prisoner's due-process interests. *Cf. Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (finding an eight-year stint in administrative custody to be "'atypical' [and significant] in relation to the ordinary incidents of prison life").

The prisoner here does not allege that he was subjected to such an extreme constraint. Instead he was placed in segregation for 5 days, fined $4, placed on telephone restriction for 30 days and "Res Restriction" for 9 months, and had visitation privileges suspended for 6 months. The plaintiff has failed to show that these restrictions exceeded the basic discomforts indicative of the "ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In sum, the allegations in the complaint fail to state a claim based on the violation of the plaintiff's due-process rights.

## IV. Conclusion

For the reasons set forth herein, the Court will dismiss all claims against defendants April Hall and Jason Woodall, and will dismiss the plaintiff's due-process claims against the two remaining defendants. The Court will permit the equal-protection claim to proceed against defendants Sheila Howard and Charles Simmons in their individual capacity, but will dismiss the official-capacity claim against them.

An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge